## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ] | |
| | ] | |
| **v.** | ] | **2:18-cr-00502-ACA-SGC** |
| | ] | |
| **FREDI ADAME-HUANTE** | ] | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendant Fredi Adame-Huante's ("Mr. Huante") motion to suppress evidence. (Doc. 12). In October 2018, the United States indicted Mr. Huante on one count of possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A). (Doc. 6). Mr. Huante moves to suppress evidence of a partially full box of gun shells, a loaded pistol, a digital scale, and drugs found in the vehicle he was driving when he was pulled over on March 19, 2017. (Doc. 12 at 1).

Based on the evidence presented at the suppression hearing, the court finds that on March 19, 2017, Mr. Huante and a friend were out for a drive. Around four that morning, Huntsville Police Officer James Andrews and Officer Higgins were patrolling in separate police vehicles. (Tr. 12 – 13). As the two officers drove eastbound on Hood Road, Officer Andrews observed Mr. Huante driving west followed by a white van. (Tr. 11, 24). Officer Andrews noticed Mr. Huante and the

white van swerving out of their lane and into the middle of the road. (Tr. 21, 24, 40).

Suspecting that one or both drivers of the vehicles were driving under the influence, the officers decided to pull the two vehicles over. (Tr. 25). Officers Andrews and Higgins made U-turns on Hood Road and approached the two vehicles. (Tr. 27-28). Officer Andrews then passed the white van, followed behind Mr. Huante, and activated his code equipment (e.g., the vehicle's police lights). (Tr. 27-28, 49; *see also* Ex. 9 at 2). Because the car's dash cam begins recording only after the code equipment is activated, there is no video evidence of anything that happened before this point. (Tr. 26).

Mr. Huante did not pull over immediately. (Gov. Ex. 1). Instead, he continued to drive another 20 seconds. (*Id.*). During that time, Officer Andrews noticed the passenger lift himself out of the seat and lean to the left. Officer Andrews testified that the passenger appeared to be stuffing something behind or underneath him (tr. 49; *see also* Ex. 9), heightening Officer Andrews's suspicion of criminal activity. (Tr. 49). Once the passenger stopped moving, Mr. Huante pulled over and came to a stop. (Gov. Ex. 1; Tr. 18).

When Officer Andrews approached Mr. Huante's window, he smelled alcohol on Mr. Huante. (Ex. 9 at 2). Mr. Huante appeared intoxicated with glassy, red, bloodshot eyes. (*Id.*). Officer Andrews asked Mr. Huante to step out of the car

and patted him down for weapons. (*Id.*). While speaking with Mr. Huante, Officer Andrews noticed what appeared to be cocaine residue on Mr. Huante's nose and pants. (*Id.*). Mr. Huante admitted to Officer Andrews that he used cocaine before driving. (Tr. 50).

After speaking with Mr. Huante, Officer Andrews completed a search of the car. (Tr. 50). In the course of the search, Officer Andrews uncovered a partially full box of gun shells (tr. 50), a loaded pistol (ex. 9 at 2), a digital scale (*see* doc. 12 at 1), and drugs (tr. 39 – 40). Officer Andrews arrested Mr. Huante for possession of a pistol without a license and arrested the passenger for possession with intent to distribute. (Ex. 9).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures [.]" U.S. Const. amend. IV. "A traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry [v. Ohio]*." *United States v. Harris,* 526 F.3d 1334, 1337 (11th Cir. 2008). Both probable cause and reasonable suspicion are analyzed based on the totality of the circumstances. *Id.*; *see also Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citing *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). In deciding if probable cause existed, the court must look to whether the 'the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' *Lee,* 284 F.3d at 1195 (internal citations omitted). Although probable cause goes beyond a mere suspicion, it does not require the same "standard of conclusiveness and probability as the facts necessary to support a conviction." *United States v. Dunn,* 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting *Lee,* 284 at 1195 (11th Cir. 2002)). "'Reasonable suspicion' for Fourth Amendment purposes, requires more than mere fanciful conjecture; it must be based upon a particularized and objective basis for suspecting a particular person of criminal activity." *Denson v. U.S.*, 574 F.3d 1318, 1341 (11th Cir. 2009) (*citing United States v. Cortez,* 449 U.S. 411, 417-18 (1981)).

Mr. Huante alleges that Officer Andrews's initial stop of his vehicle lacked probable cause and so any evidence obtained as a result of the unlawful stop and subsequent search must be suppressed. (See Doc 12 at ¶ 3). Mr. Huante contends that because the only dash cam video shows him driving within his lane, the government has not established that he was committing or appeared to be committing a traffic violation by swerving out of his lane. Accordingly, he says Officer Andrews did not have reasonable grounds to believe he was driving under the influence.

The court finds that the stop in this case was justified both by probable cause that Mr. Huante had committed a traffic violation and by a reasonable suspicion that Mr. Huante was engaged in criminal activity. The only evidence before the court is Officer Andrews's testimony that he observed Mr. Huante swerving out of his lane. In addition to his demeanor while testifying, his testimony is consistent with the incident report filed with the Huntsville Police Department. Accordingly, the court finds Officer Andrews's testimony credible and accepts his testimony about seeing Mr. Huante swerving in the road at four in the morning. Probable cause existed to believe that Mr. Huante had committed a traffic violation, justifying the initial stop.

In any event, reasonable suspicion also existed to believe Mr. Huante and his passenger were engaged in criminal activity. Officer Andrews testified that after he turned on his lights, he observed Mr. Huante's passenger making unusual movements in the car. He believed that the passenger was attempting to hide something. This, combined with the traffic violation, gave him reasonable suspicion to believe that the occupants of the vehicle were engaged in criminal activity.

The court finds that both probable cause and reasonable suspicion justified the stop. The court therefore **DENIES** Mr. Huante's motion to suppress.

**DONE** and **ORDERED** this February 12, 2019

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE